UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VANTAGE SPECIALTY CHEMICALS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>STARR SURPLUS LINES INSURANCE COMPANY and ASCOT SPECIALTY INSURANCE COMPANY,<br><br>Defendants. | Case No. 25-cv-1311 |

**COMPLAINT AND JURY DEMAND**

Plaintiff Vantage Specialty Chemicals, Inc. ("Vantage" or "Plaintiff") states as follows for its complaint for breach of contract and other relief against Defendants Starr Surplus Lines Insurance Company ("Starr") and Ascot Specialty Insurance Company ("Ascot") (collectively Starr and Ascot are "Defendants" or "Insurers"):

**NATURE OF THE ACTION**

1. This is an insurance coverage action arising out of numerous lawsuits filed by residents of Lake County, Illinois alleging that they have suffered a variety of illnesses from exposure to ethylene oxide emitted from a facility that Vantage's wholly-owned subsidiary acquired in 2003.

2. Defendants Starr and Ascot issued primary and excess liability insurance policies to Vantage. Defendants have wrongfully denied coverage for the EtO lawsuits filed against Vantage during their policy periods, from June 30, 2023 to June 30, 2024 for Starr and from June 30, 2022 to June 30, 2024 for Ascot.

3. Vantage brings this action for breach of contract to obtain indemnity for the settlements that Vantage has become legally obligated to pay in the underlying litigation and to obtain reimbursement of over $8 million in defense costs that Vantage incurred in defending itself in the underlying litigation after tendering the claims for coverage on April 5, 2024.

## PARTIES, JURISDICTION, AND VENUE

4. Vantage is a corporation organized under the laws of Delaware with its principal place of business located in Chicago, Illinois. Accordingly, Vantage is a citizen of Delaware and Illinois for purposes of diversity jurisdiction.

5. Defendant Ascot Specialty Insurance Company ("Ascot") is a Rhode Island corporation with its principal place of business located in New York, New York. Accordingly, Ascot is a citizen of Rhode Island and New York for purposes of diversity jurisdiction.

6. Defendant Starr Surplus Lines Insurance Company ("Starr") is a Texas corporation with its principal place of business located in New York, New York. Accordingly, Starr is a citizen of Texas and New York for purposes of diversity jurisdiction.

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000 exclusive of interest and costs. This Court has personal jurisdiction over Ascot and Starr because they reside in and are citizens of New York.

8. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because Ascot and Starr are residents of this judicial district as defined by 28 U.S.C. § 1391(d), and pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to this claim occurred in this judicial district.

9. Venue also is proper in this district because the insurance policies at issue contain provisions selecting New York federal or state courts as the exclusive forum for the resolution of disputes.

10. The policies issued by Ascot contain the following Choice of Forum provision:

> In the event that the insured and we have any dispute concerning or relating to this policy, including its formation, coverage provided hereunder, or the meaning, interpretation or operation of any term, condition, definition or provision of this policy resulting in litigation, arbitration or other form of dispute resolution, the insured agrees with us that any such litigation, arbitration or other form of dispute resolution shall take place in the appropriate federal or state courts located in New York, New York.

11. The policies issued by Starr contain the following Choice of Forum provision: "The Insurer and the Insured hereby expressly agree that disputes between them shall be litigated in the Supreme Court of the State of New York in and for the County of New York or in the U.S. District Court for the Southern District of New York."

## FACTUAL ALLEGATIONS

**I.  Vantage and the Gurnee Facility**

12. From June 30, 2003 to the present, Vantage, through its wholly-owned subsidiary Vantage Specialties, Inc. (f/k/a Petroferm, Inc.), operated a facility in Gurnee, Illinois (the "Gurnee Facility") that manufactures ingredients for everyday products, such as packaged foods, cosmetics, and shampoos, by converting Ethylene Oxide ("EtO") into other useful compounds.

13. The Gurnee Facility began operations in 1970. Prior to its acquisition of the Gurnee Facility on June 30, 2003, Vantage did not have any direct or indirect ownership interest in the Gurnee Facility nor any involvement in its operations.

14. At all relevant times, Vantage was operating the Gurnee Facility and emitting EtO pursuant to permits from the Illinois Environmental Protection Agency issued to its wholly-owned subsidiary Vantage Specialties, Inc. (f/k/a Petroferm, Inc.).

15.     The EtO emissions from the Gurnee Facility have always been within the limits of the permits granted by the Illinois Environmental Protection Agency.

16.     Between June 30, 2022 and June 30, 2023, twenty-seven plaintiffs sued Vantage, filing complaints in the Circuit Court of Cook County alleging that they suffered bodily injury due to the inhalation of EtO purportedly emitted from the Gurnee Facility.

17.     Another 359 plaintiffs filed lawsuits against Vantage between June 30, 2023 and the present alleging bodily injury due to the inhalation of EtO purportedly emitted from the Gurnee Facility.  The lawsuits filed against Vantage on or after June 30, 2022 are collectively referred to herein as the "Underlying Suits."

18.     The Circuit Court of Cook County consolidated the Underlying Suits and other actions against Vantage for pre-trial purposes, discovery-related matters, and matters prior to trial under the caption *In Re: Medline EtO Release*, Circuit Court of Cook County, Illinois Consolidated Case No. 2019 L 009502/2023 L 000686 (the "Consolidated Action").

19.     The complaints in the Underlying Suits generally allege that the underlying plaintiffs suffered bodily injury due to the inhalation of EtO from the Gurnee Facility at various times from 1985 to present.

20.     A list of the Underlying Suits filed against Vantage for which it is seeking coverage is attached hereto as **Exhibit A.**

21.     On or about May 31, 2024, Vantage entered into a binding term sheet, followed by a confidential settlement agreement executed on November 1, 2024, documenting a settlement that, subject to various conditions, is expected to resolve all of the claims in the Consolidated Action, including the Underlying Suits. The final settlement provides for, among other things, entry of a consent judgment for the full settlement amount, the payment by Vantage of part of that

settlement amount, and a covenant by the settling plaintiffs not to execute against or otherwise seek recovery of the remainder of the settlement amount except from Vantage's available insurance and/or Vantage's insurance broker.

## II.     The Policies

### A.     The Starr Policies

22.     Starr issued an "Environmental Shield" Policy to Vantage Specialty Chemicals for the period June 30, 2022 to June 30, 2023 (the "Starr Primary Policy"). A true and correct copy of the Starr Primary Policy is attached hereto as **Exhibit B-1** and incorporated herein by reference.

23.     Vantage is an "insured" under the Starr Primary Policy.

24.     All premiums for the Starr Primary Policy have been paid.

25.     The Starr Primary Policy provides that:

[Starr] will pay those sums that the insured becomes legally obligated to pay as damages because of **Bodily Injury** … to which this insurance applies.

26.     The Starr Primary Policy further provides that Starr "will have the right and duty to defend the insured against any **Suit** seeking" covered damages. Any amounts incurred by Starr pursuant to its defense obligations do not erode the Starr Primary Policy's limits of liability.

27.     The Starr Primary Policy states that the insurance applies if "Bodily Injury" is (1) "caused by an **Occurrence** that takes place in the **Coverage Territory**" and (2) "occurs during the **Policy Period**."

28.     The Starr Primary Policy defines "Bodily Injury" as:

a.      Injury, sickness, disease or illness of a physical nature sustained by a person, including any associated medical monitoring costs resulting from any of these at any time;

b.      Death resulting from such physical injury, sickness, disease or illness sustained by a person;

c.      Mental anguish, shock, emotional distress or other mental injury; and

  d. Care necessitated by, or loss of services resulting from, the foregoing.

29. The Starr Primary Policy defines "Occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

30. The Starr Primary Policy defines "Coverage Territory" to include "the United States of America."

31. The Starr Primary Policy defines "Policy Period" as "the period of time stated in the Policy Declarations or any shorter period as a result of cancellation or amendment of this **Policy** by the Named Insured or by the Insurer."

32. Starr issued an "Excess Liability" Policy to Vantage Specialty Chemicals for the period June 30, 2022 to June 30, 2023 (the "Starr Excess Policy"). A true and correct copy of the Starr Excess Policy is attached hereto as **Exhibit B-2** and incorporated herein by reference. The Starr Primary Policy and the Starr Excess Policy are collectively referred to herein as the "Starr Policies."

33. Vantage is an "insured" under the Starr Excess Policy.

34. All premiums for the Starr Excess Policy have been paid.

35. The Starr Excess Policy provides that:

> We will pay on behalf of the Insured, the "Ultimate Net Loss" in excess of the "Underlying Insurance" as shown in **ITEM 5.** of the Declarations, that the Insured becomes legally obligated to pay for loss or damage to which this insurance applies and that takes place in the Coverage Territory. Except for the terms, definitions, conditions and exclusions of this Policy, the coverage provided by this Policy shall follow the terms, definitions, conditions and exclusions of the applicable First Underlying Insurance Policy(ies) shown in **ITEM 5.A.** of the Declarations.

36. As relevant here, the "Underlying Insurance" for the Starr Excess Policy is the Starr Primary Policy.

37. The Starr Excess Policy defines "Ultimate Net Loss" as:

[T]he total sum, after reduction for all recoveries including other valid and collectible insurance, excepting only the "Underlying Insurance" scheduled under **ITEM 5.** of the Declarations, actually paid or payable due to a claim or suit for which you or an Insured are liable either by a settlement to which we agreed or a final judgment.

The term "Ultimate Net Loss" shall also include defense costs when such defense costs are included within the limits of insurance of any applicable "Underlying Insurance".

B.    **The Ascot Policies**

38.    Ascot issued "Excess Liability" Policies to Vantage Specialty Chemicals Holdings, Inc. for the periods June 30, 2022 to June 30, 2023 (the "2022-2023 Ascot Policy") and June 30, 2023 to June 30, 2024 (the "2023-2024 Ascot Policy"). The 2022-2023 Ascot Policy and the 2023-2024 Ascot Policy are collectively referred to herein as the "Ascot Policies." True and correct copies of the Ascot Policies are attached hereto as **Exhibits C-1** and **C-2** and incorporated herein by reference.

39.    Vantage is an "insured" under the Ascot Policies.

40.    All premiums for the Ascot Policies have been paid.

41.    The Ascot Policies provide that:

We will pay on behalf of the insured **loss** in excess of the **retained limit** because of injury or damage covered in the applicable **controlling underlying insurance** arising from an **event.** This insurance will follow the same provisions, exclusions and limitations that are contained in the applicable **controlling underlying insurance,** unless otherwise directed by this insurance. To the extent such provisions differ or conflict, the provisions of this insurance will apply. However, the coverage provided under this insurance will not be broader than that provided by the applicable **controlling underlying insurance.**

42.    As relevant here, the "controlling underlying insurance" for the 2022-2023 Ascot Policy is the Starr Primary Policy.

43.    As relevant here, the "controlling underlying insurance" for the 2023-2024 Ascot Policy is a "Commercial General Liability and Pollution Legal Liability" Policy issued by AIG

Specialty Insurance Company to Vantage Specialty Chemical Holdings, Inc. (the "AIG Specialty Policy"). A true and correct copy of the AIG Specialty Policy is attached hereto as **Exhibit D** and incorporated herein by reference.

44. Vantage is an "insured" under the AIG Specialty Policy.

45. The Ascot Policies define "loss" as:

[T]he total sum, after the reduction for recoveries, that the insured becomes legally obligated to pay as damages by reason of:

a. Settlements, judgments, binding arbitration; or

b. Other binding alternate dispute resolution proceedings entered into with our consent.

Loss includes defense expenses if the **controlling underlying insurance** specifies that limits are reduced by defense expenses.

46. The Ascot Policies define "event" as "an occurrence, offense, accident, act, or other event to which the applicable **controlling underlying insurance** applies."

47. The Ascot Policies define "retained limit" as "the available limits of **underlying insurance** applicable to the claim."

48. The AIG Specialty Policy provides coverage for "those sums" that Vantage "becomes legally obligated to pay as damages because of **bodily injury** … to which this insurance applies." The "bodily injury" must be caused by an "occurrence" that takes place in the "coverage territory" and also must "occur during the policy period."

49. The AIG Specialty Policy defines "bodily injury" as "a. Physical injury, sickness or disease sustained by any person, including death resulting therefrom and solely with respect to this item a., any accompanying medical monitoring; or b. Mental anguish, emotional distress, or shock."

50. The AIG Specialty Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

51. The AIG Specialty Policy defines "coverage territory" to include "the United States of America."

52. The Starr Policies and the Ascot Policies are collectively referred to herein as the "Policies."

II. **The Insurers' Denials Of Coverage For The Underlying Suits**

    A. **Starr's Denial of Coverage**

53. On April 5, 2024, Vantage formally tendered the Underlying Suits to Starr.

54. On May 1, 2024, Starr issued a written denial of coverage with respect to one of the lawsuits in the Consolidated Action. Starr subsequently denied coverage for all of the lawsuits in the Consolidated Action, including the Underlying Suits, via e-mail on May 6, 2024.

55. The Starr Primary Policy contains a Choice of Law provision stating that, "The construction, validity and performance of this **Policy** shall be governed by the internal laws of the State of New York without regard for New York choice of law [*sic*]."

56. The Starr Policies provide that failure to provide timely notice does not invalidate coverage, provided that following conditions are met: (1) Timely notice must have been inadvertently provided to another insurer; (2) Notice must be provided to us as soon as practicable once you become aware that such notice was inadvertently provided to another insurer; and (3) such subsequent notice to us must not materially (a) prejudice our defense or handling of any **Claim** or **Suit;** or (b) increase our cost for any **Claim** or **Suit."**

57. However, under Section 3420(a)(5) of the New York Insurance Law, all liability policies "issued or delivered in [New York]" on or after January 17, 2009 must include a provision

stating that failure to give notice as required under the policy "shall not invalidate any claim … unless failure to provide timely notice has prejudiced the insurer. . . ."

58. The Starr Policies were "issued or delivered" in New York.

59. To the extent Starr contends that it owes no coverage for the Underlying Suits because Vantage did not provide timely notice of the Underlying Suits or the "Occurrence(s)" alleged therein, Starr would have the burden to show that it was prejudiced by the timing of Vantage's notice.

60. Starr would not be able to show the required prejudice for at least the following reasons, among others: (a) Vantage promptly retained defense counsel to defend against the Underlying Suits and has been vigorously defending itself since the Underlying Suits were first filed; (b) one of Vantage's insurers, Illinois Union, has been defending Vantage in the Underlying Suits; and (c) upon information and belief, Starr contends that the "pollution exclusions" in the Starr Policies exclude coverage for all of the Underlying Suits and, therefore, if Vantage had formally tendered the Underlying Suits to Starr at an earlier time, Starr simply would have denied coverage at that time.

61. The Underlying Suits are "Suits" seeking damages against an "insured" because of "Bodily Injury" as those terms are defined in the Starr Primary Policy.

62. The alleged "Bodily Injury" in the Underlying Suits was caused by one or more "Occurrences" that took place in the "Coverage Territory" during the "Policy Period" as those terms are defined in the Starr Primary Policy.

63. No exclusion in the Starr Primary Policy eliminates the possibility that, based on the facts alleged in the complaints in the Underlying Suits and additional facts known to Starr, Vantage could be liable in the Underlying Suits for damages covered by the Starr Primary Policy.

64. No exclusion in the Starr Primary Policy eliminates coverage for the amount to be paid in settlement of the Underlying Suits.

65. Vantage settled the Underlying Suits in reasonable anticipation of liability that would have been covered under the Starr Primary Policy based on the facts known to Vantage at the time of the settlement.

66. The amount to be paid in settlement of the Underlying Suits is reasonable in light of Vantage's potential liability exposure based on the facts known to Vantage at the time of the settlement.

67. On May 7, 2024, Starr stated to Vantage in writing that:

> With respect to Vantage's intent to attempt to resolve these lawsuits on a global basis, Starr has no doubt that Vantage has taken and will continue to take all necessary steps to protect its interests and minimize its costs and exposure with respect to these matters, including making a well-informed determination regarding the acceptance or rejection of any proposed global settlement. In that regard, should Vantage make a business decision and decide to resolve these matters, Starr will not withhold its consent from Vantage to do so, and will not contest that such decision is voluntary or unreasonable.

68. The limits of the Starr Primary Policy and all other applicable primary insurance are not sufficient to reimburse Vantage fully for the entire amount to be paid in settlement of Consolidated Action, a portion of which (in an amount to be determined) is attributable to the Underlying Suits.

69. The settlement amount for the Underlying Suits that remains after exhaustion of the limits of the Starr Primary Policy and all other applicable primary insurance constitutes covered "Ultimate Net Loss" under the Starr Excess Policy.

70. No exclusion in the Starr Excess Policy eliminates coverage for the amount to be paid in settlement of the Underlying Suits.

71. Starr has denied any coverage for the Underlying Suits under the Starr Policies.

72. Thus, at all relevant times, Starr has failed and refused to provide Vantage with a defense to the Underlying Suits under the Starr Primary Policy. Starr has also failed and refused to acknowledge a duty to indemnify Vantage with respect to the settlement of the Underlying Suits under the Starr Policies.

73. Vantage has performed all known and anticipated obligations under the Starr Policies and satisfied or met all conditions, deductibles and/or retentions in such Policies. Alternatively, performance of any obligations, conditions, deductibles, and/or retentions under the Starr Policies has been waived and/or excused by the conduct of Starr or by operation of law.

**B.    Ascot's Denial of Coverage**

74. On April 5, 2024, Vantage formally tendered the Underlying Suits to Ascot.

75. Ascot has refused to take a coverage position regarding the Underlying Suits except to state that it would follow the decisions of the primary insurers – *i.e.*, Starr and AIG Specialty.

76. AIG Specialty has failed and refused to defend Vantage in the Underlying Suits and has failed and refused to acknowledge its obligation to indemnify Vantage for the settlement of the Underlying Suits.

77. The Ascot Policies contain a Choice of Law provision stating that:

> In the event that the insured and we have any dispute concerning or relating to this policy, including its formation, coverage provided hereunder, or the meaning, interpretation or operation of any term, condition, definition or provision of this policy resulting in litigation, arbitration or other form of dispute resolution, the insured agrees with us that the internal laws of the State of New York shall apply without giving effect to any conflicts or choice of law principles.

78. Under Section 3420(a)(5) of the New York Insurance Law, all liability policies "issued or delivered in [New York]" on or after January 17, 2009 must include a provision stating that failure to give notice as required under the policy "shall not invalidate any claim … unless failure to provide timely notice has prejudiced the insurer."

79. The Ascot Policies were "issued or delivered" in New York.

80. To the extent Ascot contends that it owes no coverage for the Underlying Suits because Vantage did not provide timely notice of the Underlying Suits or the "event(s)" alleged therein, Ascot would have the burden to show that it was prejudiced by the timing of Vantage's notice.

81. Ascot would not be able to show the required prejudice for at least the following reasons, among others: (a) Vantage promptly retained defense counsel to defend against the Underlying Suits and has been vigorously defending itself since the Underlying Suits were first filed; (b) one of Vantage's insurers, Illinois Union, has been defending Vantage in the Underlying Suits; and (c) upon information and belief, Starr and AIG Specialty contend that "pollution exclusions" in the Starr Primary Policy and the AIG Specialty Policy exclude coverage for all of the Underlying Suits and, therefore, if Vantage had formally tendered the Underlying Suits to Ascot at an earlier time, Ascot simply would have denied coverage at that time.

82. The Underlying Suits are "Suits" seeking damages against an "insured" because of "Bodily Injury" as those terms are defined in the Starr Primary Policy.

83. The Underlying Suits are "suits" seeking damages against an "insured" because of "bodily injury" as those terms are defined in the AIG Specialty Policy.

84. The alleged "Bodily Injury" in the Underlying Suits was caused by one or more "Occurrences" that took place in the "Coverage Territory" during the period of the Starr Primary Policy as those terms are defined in the Starr Primary Policy.

85. The alleged "bodily injuries" in the Underlying Suits were caused by one or more "occurrences" that took place in the "coverage territory" during the periods of the AIG Specialty Policy as those terms are defined in the AIG Specialty Policy.

86. No exclusion in the Starr Primary Policy or the AIG Specialty Policy eliminates coverage for the amount to be paid in settlement of the Underlying Suits.

87. Vantage settled the Underlying Suits in reasonable anticipation of liability that would have been covered under the Ascot Policies based on the facts known to Vantage at the time of the settlement.

88. The amount to be paid in settlement of the Underlying Suits is reasonable in light of Vantage's potential liability exposure based on the facts known to Vantage at the time of the settlement.

89. The limits of the Starr Primary Policy, the AIG Specialty Policy, and all other applicable primary and umbrella/excess insurance, are not sufficient to reimburse Vantage fully for the entire amount to be paid in settlement of the Consolidated Action, a portion of which (in an amount to be determined) is attributable to the Underlying Suits.

90. The settlement amount for the Underlying Suits that remains after exhaustion of the limits of the Starr Primary Policy, the AIG Specialty Policy, and all other applicable primary and umbrella/excess insurance, constitutes covered "loss" under the Ascot Policies.

91. No exclusion in the Ascot Policies eliminates coverage for the amount to be paid in settlement of the Underlying Suits.

92. Ascot has denied any coverage for the Underlying Suits under the Ascot Policies.

93. Thus, at all relevant times, Ascot has failed and refused to acknowledge a duty to indemnify Vantage with respect to the settlement of the Underlying Suits under the Ascot Policies.

94. Vantage has performed all known and anticipated obligations under the Ascot Policies and satisfied or met all conditions, deductibles and/or retentions in such Policies.

Alternatively, performance of any obligations, conditions, deductibles, and/or retentions under the Ascot Policies has been waived and/or excused by the conduct of Ascot or by operation of law.

## COUNT ONE
### (Breach of Contract – Duty to Defend – Starr)

95. Vantage realleges and incorporates by reference the allegations of the foregoing paragraphs as if fully set forth herein.

96. The Starr Primary Policy constitutes a legally binding and enforceable contract.

97. Vantage is an insured under the Starr Primary Policy.

98. Starr was required under the Starr Primary Policy to provide a complete defense and/or reimburse Vantage's defense costs incurred subsequent to the date of tender on April 5, 2024 in connection with the Underlying Suits.

99. Starr failed and/or refused to acknowledge any potential coverage for and any obligation to defend Vantage in connection with the Underlying Suits. Starr's failure and refusal to honor the duty to defend constitutes a breach of the Starr Primary Policy.

100. Between April 5, 2024 (when Vantage tendered its claim to Starr) and November 1, 2024 (when the settlement agreement was signed), Vantage incurred over $8 million in attorneys' fees, costs, and expenses to defend itself against the Underlying Suits.

101. As a direct and proximate result of Starr's breach of contract, Vantage has incurred direct damages on account thereof in an amount to be proven at trial, including but not limited to attorneys' fees and costs and expenses incurred in the defense of the Underlying Suits.

## COUNT TWO
### (Breach of Contract – Duty to Indemnify – Starr)

102. Vantage realleges and incorporates by reference the allegations of the foregoing paragraphs as if fully set forth herein.

103. The Starr Policies constitute legally binding and enforceable contracts.

104. Vantage is an insured under the Starr Policies.

105. Starr agreed in the Starr Policies to indemnify Vantage for any liabilities incurred, to be incurred, or paid by Vantage in the Underlying Suits, including any settlements and/or judgments.

106. Starr has, through either denial, silence and/or inaction, refused and/or failed to acknowledge coverage for the Underlying Suits under the Starr Policies.

107. Starr's failure to indemnify Vantage for the portion of Vantage's settlement of the Consolidated Action attributable to the Underlying Suits constitutes a material breach of contract.

108. As a direct and proximate result of Starr's breach of contract, Vantage has incurred direct damages on account of Starr's breach in amount equal to the portion of Vantage's settlement of the Consolidated Action attributable to the Underlying Suits.

109. Vantage settled the Underlying Suits in reasonable anticipation of liability and for a reasonable amount.

110. The portion of the agreed settlement amount attributable to the Underlying Suits, subject to certain conditions and acceptance by individuals that brought the Underlying Suits, exceeds any potentially applicable deductibles, retentions, and/or retained limits in all of the Starr Policies.

**COUNT THREE**
**(Breach of Contract – Duty to Indemnify – Ascot)**

111. Vantage realleges and incorporates by reference the allegations of the foregoing paragraphs as if fully set forth herein.

112. The Ascot Policies constitute legally binding and enforceable contracts.

113. Vantage is an insured under the Ascot Policies.

114. Ascot agreed in the Ascot Policies to indemnify Vantage for any liabilities incurred, to be incurred, or paid by Vantage in the Underlying Suits, including any settlements and/or judgments.

115. Ascot has, through either denial, silence and/or inaction, refused and/or failed to acknowledge coverage for the Underlying Suits under the Ascot Policies.

116. Ascot's failure to indemnify Vantage for the portion of Vantage's settlement of the Consolidated Action attributable to the Underlying Suits constitutes a material breach of contract.

117. As a direct and proximate result of Ascot's breach of contract, Vantage has incurred direct damages on account of Starr's breach in an amount equal to the portion of Vantage's settlement of the Consolidated Action attributable to the Underlying Suits.

118. Vantage settled the Underlying Suits in reasonable anticipation of liability and for a reasonable amount.

119. The agreed settlement amount, subject to certain conditions and acceptance by individuals that brought the Underlying Suits, exceeds all potentially applicable limits in the Starr Primary Policy, the AIG Specialty Policy, and all other applicable primary policies.

### **PRAYERS FOR RELIEF**

WHEREFORE, Vantage Specialty Chemicals, Inc. prays that the Court enter judgment in its favor and against Defendants Starr Surplus Lines Insurance Company and Ascot Specialty Insurance Company, and grant the following relief

A. Award Vantage the damages it sustained as a result of Starr's breach of its duty to defend in the Starr Primary Policy as set forth herein in **COUNT ONE** in an amount no less than $8 million, including but not limited to, the attorneys' fees, expenses, and costs incurred by Vantage to defend the Underlying Suits during the period from April 5, 2024 to the present;

B. Award Vantage the damages it sustained as a result of Starr's breach of its duty to indemnify in the Starr Policies as set forth herein in **COUNT TWO** in an amount to be established through proof, including but not limited to, an amount equal to the

portion of Vantage's settlement of the Consolidated Action attributable to the Underlying Suits;

C. Award Vantage the damages it sustained as a result of Ascot's breach of its duty to indemnify in the Ascot Policies as set forth herein in **COUNT THREE** in an amount to be established through proof, including but not limited to, an amount equal to the portion of Vantage's settlement of the Consolidated Action attributable to the Underlying Suits.

D. Enter a judgment awarding any pre-judgment interest and post-judgment interest available under applicable law; and

E. Enter a judgment awarding Vantage its costs of court and any other and further relief to which either of them may justly be entitled.

Dated: February 13, 2025                                   PASHMAN STEIN WALDER HAYDEN, P.C.

By: s/ *Brendan M. Walsh*
Brendan M. Walsh, Esq.
370 Lexington Avenue
Suite 505
New York, NY 10017
P (646) 828-8081
bwalsh@pashmanstein.com

*Of Counsel*
Angela R. Elbert (aelbert@nge.com) (*pro hac vice* forthcoming)
Andrew G. May (amay@nge.com) (*pro hac vice* forthcoming)
Paul Walker-Bright (pwalkerbright@nge.com) (*pro hac vice* forthcoming)
NEAL, GERBER & EISENBERG LLP
Two North LaSalle Street, 17th Floor
Chicago, Illinois 60602
Telephone: (312) 269-8000

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: February 13, 2025                              *Attorneys for Plaintiff*

                                               PASHMAN STEIN WALDER HAYDEN, P.C.

                                               By: s/ *Brendan M. Walsh*
                                                   Brendan M. Walsh, Esq.
                                                   370 Lexington Avenue
                                                   Suite 505
                                                   New York, NY 10017
                                                   P (646) 828-8081
                                                   bwalsh@pashmanstein.com