USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/14/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VANTAGE SPECIALTY CHEMICALS, INC.,

Plaintiff,

-against-

STARR SURPLUS LINES INSURANCE COMPANY and ASCOT SPECIALTY INSURANCE COMPANY,

Defendants.

25-CV-01311 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

This is an insurance coverage dispute. Plaintiff is Vantage Specialty Chemicals, Inc. ("Vantage"). Defendants are its insurers, Starr Surplus Lines Insurance Company ("Starr") and Ascot Specialty Insurance Company ("Ascot"). Through a subsidiary, Vantage operated a facility in Illinois that released ethylene oxide into the air. Over three hundred residents of the area around the facility filed lawsuits against Vantage in Illinois, alleging injuries from the facility's release of ethylene oxide. Vantage tendered defense and indemnity costs to Starr and Ascot. Both insurers denied coverage under an exclusion for bodily injury caused by pollution. Vantage then filed this suit, seeking recovery from both insurers for settlement costs and legal fees incurred in the underlying lawsuits. Before the Court now are Defendants' motions to dismiss, arguing they had no duty to defend or indemnify Vantage in the underlying actions given the pollution exclusion. For the following reasons, the motions are GRANTED.

## BACKGROUND

## I. RELEVANT FACTS[1]

### A. Policies and Pollution Exclusion

Starr issued Vantage a primary policy and an excess policy, while Ascot issued two excess policies. Protracted discussion of these policies is unnecessary, however, as no party disputes that coverage under all four policies depends on whether the underlying actions fall within a pollution exclusion in the Starr primary policy (the "Pollution Exclusion")..[2]

The Pollution Exclusion excludes coverage for: "Personal and Advertising Injury that would not have occurred in whole or in part but for the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of Pollutants at any time, and regardless of whether such discharge, dispersal, seepage, migration, release, or escape occurs indoors or outdoors." Dkt. No. 1-2 at 17. The Starr primary policy defined "Pollutants" as "any solid, liquid, gaseous, lubricant, thermal, chemical, biological, radioactive substance, material or

[1] The following facts are taken from the complaint (Dkt. No. 1, "Compl.") or documents appended to the complaint and are assumed true solely for purposes of resolving the motions to dismiss. This Opinion refers to the motion papers as follows: Starr's memorandum in support of its motion to dismiss (Dkt. No. 24) as "Starr Mot." and its reply (Dkt. No. 35) as "Starr Reply"; Ascot's memorandum in support of its motion to dismiss (Dkt. No. 32) as "Ascot Mot." and its reply (Dkt. No. 37) as "Ascot Reply"; and Vantage's consolidated opposition (Dkt. No. 33) as "Opp."

[2] The Starr primary policy includes the Pollution Exclusion. Starr's excess policy provides it is not broader than the primary policy, so it does not provide coverage if the Pollution Exclusion applies. Ascot's excess policies also provide they are not broader than any applicable underlying policy. The underlying policy for one Ascot excess policy is the Starr primary policy. The underlying policy for the other Ascot excess policy is an insurance policy from AIG Specialty, which includes a virtually identical pollution exclusion to the Starr primary policy. *Compare* Dkt. No. 1-2 at 17; *with* Dkt. No. 1-6 at 9. The only meaningful difference between the two pollution exclusions is that the Starr primary policy's exclusion specifies it does not matter whether a discharge "occurs indoors or outdoors," but the omission of similar language from the AIG Specialty primary policy does not affect the Court's analysis. Accordingly, if the Starr primary policy's Pollution Exclusion applies to the underlying lawsuits, none of the four policies relevant to this lawsuit provide coverage.

matter, irritant or contaminant, including smoke, vapors, soot, fumes, acids, alkalis, chemicals, radiation, or waste." *Id.* at 52.

**B. The Underlying Actions and Insurance Tenders**

Through a subsidiary, Vantage operated a facility in Gurnee, Illinois (the "Facility") that "manufactures ingredients for everyday products . . . by converting Ethylene Oxide ('EtO') into other useful compounds." Compl. ¶ 12. Vantage operated the Facility and emitted EtO consistent with permits from the Illinois Environmental Protection Agency. *Id.* ¶ 14. The Facility's EtO emissions have always fallen within the permits' limits. *Id.* ¶ 15.

Starting in June 2022, hundreds of plaintiffs who resided in Gurnee sued Vantage in state court in Illinois, "alleging that they suffered bodily injury due to the inhalation of EtO purportedly emitted from" the Facility (the "Underlying Actions"). *Id.* ¶¶ 16–17. On May 31, 2024, Vantage entered a binding term sheet to settle the Underlying Actions and executed a confidential settlement agreement on November 1, 2024. *Id.* ¶ 21. Vantage tendered defense costs and sought indemnity from Starr and Ascot beginning in April 2024. *Id.* ¶¶ 53, 74. Both insurers denied coverage. *Id.* ¶¶ 54, 75.

## II. PROCEDURAL HISTORY

Vantage filed this lawsuit on February 13, 2025. Compl. Its complaint alleges Starr breached its duties to defend and indemnify, and Ascot breached its duty to indemnify. *Id.* at 15–17.

Starr and Ascot have both moved to dismiss the complaint. *See* Dkt. Nos. 23 & 30. The motions raise one issue: whether the Pollution Exclusion applied to the Underlying Actions. *See* Starr Mem. at 1; Ascot Mem. at 2. Both insurers highlight that the Underlying Actions sought recovery for bodily injury due to inhaling EtO released from the Facility. Because those

allegations fall squarely within the Pollution Exclusion, they argue, neither Starr nor Ascott had any duty to defend or indemnify Vantage under the policies.

In opposition, Vantage argues that pollution exclusions apply only to "traditional environmental pollution" and the Underlying Actions involve non-traditional pollution; that EtO released consistent with a regulatory permit cannot be a "pollutant" under a pollution exclusion; and that the Complaint cannot be dismissed at the pleading stage because fact discovery is needed on whether EtO is a "pollutant." *See* Opp. at 6–12. After briefing concluded, Defendants filed a notice of supplemental authority, notifying the Court the Illinois Supreme Court held that whether an insured had a permit authorizing emission of a substance is not relevant to whether a pollution exclusion applies. Dkt. No. 42.

## DISCUSSION

### I. LEGAL STANDARD ON A MOTION TO DISMISS

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[3] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed if "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. The Court must assume all well-pled facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012); *see also A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993)

[3] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and omissions, and adopt alterations.

("[A]ll allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party."). However, the Court need not accept as true conclusory assertions. *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 321 (2d Cir. 2021).

In addressing a motion to dismiss, a court may consider documents attached to the complaint or incorporated by reference therein. *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021). "In the event that a plaintiff alleges a claim based on a written instrument, as is the case here, the court may consider such an instrument in ruling on a Rule 12(b)(6) motion." *Bill Diodato Photography LLC v. Avon Prods., Inc.*, No. 14-CV-00847 (RWS), 2012 WL 4335164, at *3 (S.D.N.Y. Sept. 21, 2012).

## II. RELEVANT INSURANCE LAW CONCEPTS

### A. The Duties to Indemnify and Defend

Insurance policies may encompass both a duty to indemnify and a duty to defend. *See CGS Indus., Inc. v. Charter Oak Fire Ins. Co.*, 720 F.3d 71, 76–77 (2d Cir. 2013). A duty to indemnify requires an insurer to "indemnify" an insured for liability, *i.e.*, a judgment or a settlement for a covered event. The duty to indemnify "arises only if the claim for which the insured has been judged liable lies within the policy's coverage." *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 115 (2d Cir. 2005). As a result, the obligation to indemnify is "determined by the actual basis for the insured's liability to a third person." *Servidone Const. Corp. v. Security Ins. Co. of Hartford*, 64 N.Y.2d 419, 424 (N.Y. 1985).

The duty to defend is broader than the duty to indemnify and has been analogized to "litigation insurance." *Id.* at 423–24. While the duty to indemnify is triggered by actual liability for a covered event, the duty to defend requires an insurer to cover defense costs for an insured in a lawsuit whose allegations <u>could</u> support liability for a covered event. To determine if an

insurer has a duty to defend, a court looks to the allegations in an underlying action's pleadings, compares those pleadings to an insurance policy, and determines if there is a "reasonable possibility of coverage" based on the allegations. *BP Air Conditioning Corp. v. One Bacon Ins. Grp.*, 8 N.Y.3d 708, 714 (N.Y. 2007). If so, an insurer has a duty to defend, no matter how frivolous or meritless the allegations may appear. *Servidone Const. Corp.*, 65 N.Y.2d at 424. "[A]n insurer can be relieved of its duty to defend," however, "if it establishes as a matter of law that there is no possible factual or legal basis on which it might eventually be obligated to indemnify its insured under any policy provision." *Allstate Ins. Co. v. Zuk*, 78 N.Y.2d 41, 45 (N.Y. 1991); *see also Atlantic Cas. Ins. Co. v. Value Waterproofing Ins.*, 918 F. Supp. 2d 243, 252–53 (S.D.N.Y. 2013) (describing when an insurer may be relieved of a duty to defend).

**B. Coverage Exclusions Generally**

Insurance policies sometimes contain what are called coverage exclusions. An insurer may "negate coverage" for both the duty to defend and the duty to indemnify in a particular lawsuit if the policy contains an exclusion and the insurer can establish "that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case." *Continental Cas. Co. v. Rapid-American Corp.*, 80 N.Y.2d 640, 652 (N.Y. 1993). For the duty to defend, such negation requires the insurer to show that no part of an underlying case alleges a covered event. *See Int'l Paper Co. v. Cont'l Cas. Co.*, 35 N.Y.2d 322, 325 (N.Y. 1974). In other words, if one claim in an underlying case falls within a coverage exclusion and another does not, an insurer still has a duty to defend an insured for the entirety of the lawsuit. *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 311 (N.Y. 1984). Like the duty to defend, "the applicability of the exclusions depends on the nature of the injury alleged in the underlying complaints." *Inc. Vill. of Cedarhurst v. Hanover Ins. Co.*, 89 N.Y.2d 293, 300 (N.Y. 1996).

**C. Pollution Exclusions**

The present case involves a subset of exclusions known as a "pollution exclusion." These exclusions exempt coverage for bodily injury and property damage caused by pollution. New York courts have determined that pollution exclusions apply only where "damages alleged are truly environmental in nature" or "result from pollution to the environment." *Belt Painting Corp. v. TIG Ins. Co.*, 100 N.Y.2d 377, 383 (N.Y. 2003). In assessing whether a lawsuit involves classic environmental pollution, courts have asked whether—consistent with common linguistic usage—an underlying complaint alleges "environmental pollution,".[4] and looked to whether a "pollutant" was released into the environment broadly, such as into airways, waterways, or soil, versus limited to a specific location such as a home or workplace..[5] Whether a released substance qualifies as a "pollutant" depends on the allegations in an underlying complaint. *Cannon Const. Co., Inc. v. Liberty Mut. Ins. Co.*, 227 A.D.2d 364, 365 (2d Dep't

---

[4] *See, e.g.*, *Inc. Vill. of Cedarhurst*, 89 N.Y.2d at 298–99 ("In particular, pollution exclusions do not apply when the complaint does not allege that the discharge complained of actually results in pollution."); *Barney Greengrass, Inc. v. Lumbermans Mut. Cas. Co.*, No. 09-CV-07697 (NRD), 2010 WL 3069560, at *6–7 (S.D.N.Y. July 27, 2010) (exclusion did not apply because "odor" released from restaurant was not environmental pollution considering common speech).

[5] An insurer can negate coverage only if an exclusion unambiguously applies. If the facts of a case do not involve "environmental pollution," courts have avoided applying a pollution exclusion by holding the exclusion to be "ambiguous" on the facts of a given case. *See Miano v. Hehn*, 206 A.D.2d 957, 958 (4th Dep't 1994) (holding that a pollution exclusion clause was ambiguous where underlying case alleged asbestos traveled through the air within a residential home); *Janart 55 W. 8th L.L.C. v. Greenwich Ins. Co.*, 614 F. Supp. 2d 473, 478–79 (S.D.N.Y. 2009) (holding that a pollution exclusion clause was ambiguous as it was unclear whether mercury leaking from a ceiling was "environmental" in nature). In cases involving a potentially dangerous substance traveling through general environmental channels, by contrast, courts have uniformly held that a pollution exclusion is unambiguous and the substance qualifies as a pollutant. *See Cannon Const. Co., Inc. v. Liberty Mut. Ins. Co.*, 227 A.D.2d 364, 365 (2d Dep't 1996) (emphasizing allegations that a sealant "contaminated the waters and wildlife"); *St. Paul Fire & Marine Ins. Co. v. Getty Props. Corp.*, 228 A.D.3d 979, 982 (2d Dep't 2024) (emphasizing that a chemical "was a pollutant in the context of its release into groundwater"); *Gold Fields Am. Corp. v. Aetna Cas. & Sur. Co.*, 295 A.D.2d 289, 289 (1st Dep't 2002) ("Even if mining waste can be used as a commercial product, it is nonetheless covered by the absolute pollution exclusion, since indisputably hazardous substances were released into the open environment.").

1996) (determining a trial court erred in finding that whether an asphalt sealant qualified as a pollutant presented a question of fact, given allegations that the sealant "contaminated the waters and wildlife"); *Space v. Farm Fam. Mut. Ins. Co.*, 652 N.Y.S.2d 357, 358 (3d Dep't 1997) ("In our view, liquid manure is properly classified as a . . . 'pollutant' . . . when, as is alleged in the underlying action, the substance has leached into the groundwater and contaminated a well on adjoining property."); *Gold Fields Am. Corp. v. Aetna Cas. & Sur. Co.*, 295 A.D.2d 289, 289 (1st Dep't 2002) ("Even if mining waste can be used as a commercial product, it is nonetheless covered by the absolute pollution exclusion, since indisputably hazardous substances were released into the open environment.").

In addition to requiring that the "damages alleged are truly environmental in nature" or "result from pollution to the environment," *Belt Painting Corp.*, 100 N.Y.2d at 383, pollution exclusions require causation and apply only if the "harm" alleged in an underlying action directly flows from the deleterious nature of the pollutant. For example, in *Incorporated Village of Cedarhurst v. Hanover Insurance Company*, the New York Court of Appeals determined a pollution exclusion did not apply where complaints in underlying actions alleged damages due to the "flooding" or "overflow" of sewage, but did not allege whether "the injuries sustained were contamination caused by a discharge of sewage, or by the irritating or contaminating nature of the sewage." 89 N.Y.2d at 300. "Since any risk of liability faced by the [Insured] allegedly arose from the flood-like nature of the discharge rather than its 'polluting' character, the insurer is obligated to defend." *Id.* By the same token, the causation requirement is not met, and thus the pollution exclusion does not apply, where plaintiffs in an underlying action allege an injury due to an insured's violations of labor law or negligence in failing to observe proper safety practices that would have prevented harm. *See, e.g.*, *120 Greenwich Dev. Assocs., L.L.C. v.*

*Admiral Indem. Co.*, No. 08-CV-06491 (LAP), 2013 WL 12331487, at *6–9 (S.D.N.Y. Sept. 25, 2013) (collecting and discussing cases).

To summarize, a pollution exclusion applies only where an underlying lawsuit involves classic environmental pollution, meaning a harmful substance has passed into the general environment (such as soil, air, or water) and affected an area broader than a particular building or dwelling. Furthermore, the exclusion applies only if the harm complained of flows directly from the harmful nature of the pollutant, as opposed to some other aspect of the pollutant or a party's breach of an underlying legal duty.

## III. THE POLLUTION EXCLUSION ENCOMPASSES THE UNDERLYING ACTIONS

Starr and Ascot argue they had neither a duty to defend nor a duty to indemnify Vantage because the Pollution Exclusion applies to the Underlying Actions. The Court agrees.

As noted above, to determine whether an exclusion applies, a court compares the pleadings in the underlying action to the insurance policy. *See Century 21, Inc. v. Diamond State Ins. Co.*, 442 F.3d 79, 83 (2d Cir. 2006). Vantage did not include any pleadings from the underlying actions with its complaint, so the Court must rely on the description in Vantage's complaint, which is presumably presented in the light most advantageous to Vantage: "The complaints in the Underlying Suits generally allege that the underlying plaintiffs suffered bodily injury due to the inhalation of EtO from the Gurnee Facility at various times from 1985 to present." Compl. ¶ 19. The Pollution Exclusion states the policies do not cover: "Personal . . . Injury that would not have occurred in whole or in part but for the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of Pollutants at any time, and regardless of whether such discharge, dispersal, seepage, migration, release, or escape occurs indoors or outdoors." Dkt. No. 1-2 at 17.

Even construing the exclusion narrowly, the allegations from the Underlying Actions clearly fall within the Pollution Exclusion. The Underlying Actions allege EtO was "release[d]" and "disperse[d]" from the Facility into the air. The EtO then spread through the air to the surrounding area, where plaintiffs in the Underlying Actions inhaled it, thereby allegedly causing them bodily injury from inhaling the emitted EtO. These allegations rest on classic environmental pollution, the fact that EtO generally dispersed into the air was a pollutant, and the fact that plaintiffs were injured due to their inhalation of a pollutant after it was released into the air from the Facility.

Furthermore, Defendants have demonstrated as a legal matter they could have no duty to indemnify because a finding of liability on the allegations in the Underlying Actions necessarily depends on a successful showing by the plaintiffs in the Underlying Actions that inhaling the released EtO from the air in the area surrounding the Facility caused them bodily injury. There is no liability finding without a finding that the released EtO was a "pollutant" within the meaning of the Pollution Exclusion. Accordingly, based on the allegations as presented in Vantage's complaint, "there is no possible factual or legal basis on which" Starr and Ascot "might eventually be obligated to indemnify" Vantage in connection with the Underlying Actions. *Allstate Ins. Co. v. Zuk*, 78 N.Y.2d 41, 45 (N.Y. 1991).

## IV. VANTAGE'S COUNTERARGUMENTS ARE UNAVAILING

Vantage raises several arguments challenging this conclusion. None withstand scrutiny.

First, Vantage highlights that it had permits from the Illinois Environmental Protection Agency and any release of EtO from the Facility complied with those permits. Opp. at 8. Therefore, Vantage argues, the EtO it released cannot be a "pollutant" under the policies because its release was lawful according to the relevant state regulatory authority. *Id.* This position is

not well-founded.[6] An insurance policy is a contract between two private parties. *Incinia Contracting, Inc. v. Evanston Ins. Co.*, 806 F. Supp. 3d 372, 378 (S.D.N.Y. 2025). The application of an exclusion primarily depends on the exclusion's plain terms in the policy. *Platek v. Town of Hamburg*, 24 N.Y.3d 688, 693–94 (N.Y. 2015). Nothing in the Pollution Exclusion's language limits its scope or application if an insured released a pollutant under a permit or consistent with an applicable regulation, and the Court may not strike terms from the policy or impute terms that do not exist, in the absence of clear caselaw deeming certain terms either unenforceable or implicit in all such contracts under state law. *Accord Technicon Elecs. Corp. v. American Home Assur. Co.*, 74 N.Y.2d 66, 76 (N.Y. 1989); *St. Paul Fire & Marine Ins. Co. v. Getty Properties Corp.*, 228 A.D.3d 979, 982 (2d Dep't 2024); *see also Griffith Foods Int'l*, 2026 WL 181277.

Second, Vantage argues that the Underlying Actions do not allege "classic environmental pollution," so the Pollution Exclusion cannot apply. Opp. at 7. The Court disagrees. The Underlying Actions allege that Vantage released EtO into the air from the Facility for decades. The EtO spread generally through the air in the Gurnee area, contaminating the air that people across an entire county had no choice but to breathe in and thus be exposed to the released EtO. And—merely by going about their lives and involuntarily breathing the contaminated air in their community—over three hundred people were allegedly injured as a result of the released EtO from the Facility. If this does not describe "classic environmental pollution," it is unclear what would.

---

[6] In its opposition, Vantage extensively cited Illinois case law that Vantage argued supported its argument, even if it did not precisely hold that licensing or permitting overrode a pollution exclusion. Opp. at 9–10. The Illinois Supreme Court has since written on this issue and held "a permit or regulation authorizing emissions (generally or at any particular levels) has no relevance in assessing the application of a pollution exclusion within a standard-form commercial general liability policy." *Griffith Foods Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2026 WL 181277, ¶ 2 (Ill. 2026).

Third, Vantage argues fact discovery is needed on whether EtO is a "pollutant" under the policy. Opp. at 15–16. This argument misapprehends the applicable standard: whether a substance is "pollutant" under a policy depends on the allegations in an underlying action, not on questions of fact..[7] And courts in New York have consistently determined that an otherwise innocuous substance is a "pollutant" if underlying plaintiffs allege it entered and spread through the environment and then caused them harm by exposure. *See, e.g.*, *Cannon Const. Co., Inc.*, 227 A.D.2d at 365 (overturning trial court ruling that whether an asphalt sealant was a pollutant presented a factual question). As presented in the complaint, the Underlying Actions alleged the Facility released EtO into the air for decades and that residents across an entire county "suffered a variety of illnesses from exposure" to that EtO by breathing it in from the air. Compl. ¶ 1. Even drawing all inferences in Vantage's favor, those allegations show that, in the context of the Underlying Actions, EtO is unquestionably a "pollutant" under the Pollution Exclusion. "The damages resulting from this sort of broadly dispersed environmental harm fall squarely within pollution exclusions such as these—regardless of whether a particular substance is specifically named as a pollutant in an insurance policy, whether a substance was understood to have a detrimental effect on the environment at the time the policy was entered into or whether pollution was an intended result." *Tonoga, Inc. v. New Hampshire Ins. Co.*, 201 A.D.3d 1091, 1096 (3d Dep't 2022). Where the allegations are clear, fact discovery in the coverage action is unnecessary.

[7] Under some circumstances, fact discovery in the underlying lawsuit could show that a substance is not in fact a "pollutant," which could then trigger a duty to defend that did not apply based on the pleadings alone. *See, e.g.*, *622 Third Co., L.L.C. v. Nat'l Fire Ins. Co. of Hartford*, 646 F. Supp. 3d 466, 484–85 (S.D.N.Y. 2022). However, in this case there will be no further fact discovery because the Underlying Actions that are the basis for the coverage dispute have been settled.

**CONCLUSION**

For the foregoing reasons, the motions to dismiss are GRANTED. The Clerk of Court is respectfully directed to terminate Dkt. Nos. 23 and 30 and CLOSE this case.

Dated: August 14, 2026
New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge